**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |
|---|---|
| IN RE:<br><br>SHARON H. ANDERSON, | § CASE NO: 16-11851<br>§<br>§ CHAPTER 13<br>§<br>§ SECTION A |
| SUNSET HARBOUR, LLC,<br><br>    PLAINTIFF,<br><br>V.<br><br>SHARON H. ANDERSON,<br><br>    DEFENDANT. | § <br>§ <br>§ <br>§ ADV. NO. 22-1021<br>§ <br>§ <br>§ |

**MEMORANDUM OPINION AND ORDER**

The facts in this contested matter are not in dispute: Sharon Anderson ("Anderson") filed a voluntary petition for bankruptcy relief under chapter 13 of the Bankruptcy Code on July 31, 2016. [No. 16-11851, ECF Doc. 1]. In 2013 and 2014, Anderson failed to pay certain property taxes and costs assessed by the Orleans Parish Assessor's Office on her home located at 4934 Friar Tuck Drive, New Orleans, Louisiana (the "Home"), which resulted in a tax foreclosure sale on September 9, 2014. [Adv. No. 22-1021, ECF Doc. 16, Ex. B]. As a result of the tax foreclosure sale, Nebraska Alliance Realty Company became the title holder of 1% of the whole of the Home. The Tax Sale Certificate, dated October 17, 2014, and filed into the public record on October 23, 2014, states:

> The tax debtor or any person interested personally or as heir, legatee, creditor or otherwise, shall have the right to redeem the property for the period of three years, or eighteen months if legally blighted or abandoned, from the date of filing of this tax sale certificate. All redemption payments shall be made through the tax

      collector of the appropriate political subdivision. Payment shall include all statutory impositions accruing before the date of redemption payment with a five percent penalty and simple interest accruing at one percent per month.

*See id.* Anderson has continued to reside in the Home since the tax sale.

      Creditors who received notice of Anderson's July 2016 bankruptcy filing included Nebraska Alliance Realty Company at the address listed in the Tax Sale Certificate and the City of New Orleans, Bureau of the Treasury at the address of the Orleans Parish Tax Assessor's Office. [No. 16-11851, ECF Doc. 1]. On August 24, 2016, the City of New Orleans filed a proof of claim against Anderson's estate asserting a secured claim in the amount of $10,598.24 for unpaid real estate property taxes; as the foundation for the claim, the City of New Orleans attached a "Tax Sale Redemption Calculation," itemizing the "Total due to redeem property from tax sale purchaser through 8/31/2016." [No. 16-11851, Proof of Claim No. 4]. The Tax Sale Redemption Calculation instructed that "Payment to redeem your property must be submitted as a Cashier's Check or Cash Only" payable to the City of New Orleans, and directed payment to be made to the Bureau of the Treasury at the address of the Orleans Parish Tax Assessor's Office. *See id.*

      On August 2, 2016, Anderson filed a Chapter 13 Plan into the record and proposed to pay "Nebraska Alliance Realty Company c/o The City of New Orleans" the total amount of $10,598.24 as a priority claim under 11 U.S.C. § 507. [No. 16-11851, ECF Doc. 7]. The record indicates that both Nebraska Alliance Realty Company and the City of New Orleans received proper notice of the Chapter 13 Plan and the date and time of the hearing to consider confirmation of the Plan. [No. 16-11851, ECF Docs. 15 & 16]. No objections to the Plan were filed and the Court confirmed the Plan on September 30, 2016. [No. 16-11851, ECF Doc. 21]. On September 2, 2020, the Chapter 13 Trustee filed a notice stating that Anderson had completed all of the payments due under the confirmed Plan. [No. 16-11851, ECF Doc. 75]. On October 28, 2020, this Court issued an order

granting Anderson a discharge of debt pursuant to 11 U.S.C. § 1328(a). [No. 16-11851, ECF Doc. 79]. On April 14, 2021, the Chapter 13 Trustee filed a final report and account pursuant to 11 U.S.C. § 1302(b)(1) indicating that the Trustee had disbursed a total of $10,598.24 to the City of New Orleans on a priority basis from payments made by Anderson under the confirmed Plan. [No. 16-11851, ECF Doc. 82]. On June 21, 2021, this Court issued an order approving that report and account. [No. 16-11851, ECF Doc. 84]. Anderson's bankruptcy case was closed on June 23, 2021.

On or about January 29, 2021, NAR Solutions, Inc. f/k/a Nebraska Alliance Realty Company assigned its tax sale interests in the Home without warranty to Sunset Harbour, LLC. [Adv. No. 22-1021, ECF Doc. 16, Ex. A].[1] Sunset Harbour later filed an action in a Louisiana state court against Anderson to quiet tax title on the Home; Anderson defended against the lawsuit by asserting that she exercised her redemption rights under Louisiana law through completion of all payments under her Chapter 13 plan. After the state court denied Sunset Harbour's summary judgment motion, Sunset Harbour filed a motion in this Court on June 14, 2022, to reopen Anderson's bankruptcy case. [No. 16-11851, ECF Doc. 86]. After this Court granted that motion, Sunset Harbour initiated the above-captioned adversary proceeding seeking a declaration that Anderson cannot redeem the Home through her Chapter 13 Plan and that Sunset Harbour, which itself did not participate in Anderson's bankruptcy case, is not bound by the confirmed and completed Chapter 13 Plan. [Adv. No. 22-1021, ECF Doc. 1].

To that end, Sunset Harbor filed a motion for summary judgment ("Sunset Harbour MSJ"), [ECF Doc. 16]. Anderson opposes that motion. [Adv. No. 22-1021, ECF Doc. 19]. Sunset Harbour filed a reply brief in support of its summary judgment motion. [Adv. No. 22-1021, ECF Doc. 30]. Anderson also filed a motion for summary judgment ("Anderson MSJ"), [Adv. No. 22-

---

[1] On September 27, 2018, Nebraska Alliance Realty Company changed its name to NAR Solutions, Inc. [ECF Doc. 16, Ex. A].

1021, ECF Docs. 19 & 22], which Sunset Harbour opposes, [Adv. No. 22-1021, ECF Doc. 31]. For the reasons below, the Court finds that there is no genuine dispute as to any material fact and that Anderson is entitled to judgment as a matter of law.

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[2] "A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case." *Northshore Offshore Grp., LLC v. A&B Valve & Piping Sys., LLC (In re Northshore Offshore Grp., LLC)*, Adv. No. 17-3406, 2018 WL, 5880949, at *2 (Bankr. S.D. Tex. Nov. 5, 2018) (citing *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009)). In deciding a motion for summary judgment, "the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In so doing, the Court views the facts and evidence in the light most favorable to the non-moving party at all times. *See Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the presence or absence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. *See* FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). If a party fails to properly support or refute an assertion of fact, the Court

---

[2] Federal Rule of Civil Procedure is made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056.

may consider the fact undisputed for purposes of resolving a summary judgment motion. *See* FED. R. CIV. P. 56(e).

The parties here have filed cross-motions for summary judgment; the Court must rule on each party's motion on an individual and separate basis. *See White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005). "If there is no genuine issue of material fact and one or the other party is entitled to prevail as a matter of law, a court will render judgment." *Standard Ins. Co. v. Corgill*, No. 3:13CV-00997, 2013 WL 12101080, at *2 (N.D. Tex. July 23, 2013).

### B. Nebraska Alliance Realty Company Was a Creditor of Anderson's Estate and Bound by the Confirmed Chapter 13 Plan

"When a debtor enters the bankruptcy system, state or non-bankruptcy federal law usually determines the scope and nature of a debtor's property interests and the debts subject to adjustment." *In re Gonzalez*, 550 B.R. 711, 715 (Bankr. E.D. Pa. 2016) (citing *Butner v. United States*, 440 U.S. 48, 54–55 (1979)). A large part of the bankruptcy process itself involves determining the extent to which Bankruptcy Code provisions permit a debtor to modify the preexisting relationships between a debtor and her creditors. *See United States v. Energy Res. Co.*, 495 U.S. 545, 549 (1990). Here, Anderson's relationship to Nebraska Alliance Realty Company and the City of New Orleans vis-à-vis the Home is the starting point in deciding this contested matter.

Under Louisiana law, "when a property owner fails to pay ad valorem property taxes, the parish, through its tax collector, has a lien by operation of law against the property for the unpaid taxes." *Cent. Props. v. Fairway Gardenhomes, LLC*, 225 So.3d 441, 448 (La. 2017) (citing LA. REV. STAT. ANN. § 47:1993(G)). The Louisiana Constitution provides a tax-sale process by which taxing authorities may collect delinquent property taxes and tax debtors may redeem property. *See*

LA. CONST. art. VII, § 25; *Fairway Gardenhomes, LLC*, 225 So.3d at 448 ("The purpose of Act 819 of 2008, as set forth in La. Rev. Stat. 47:2121(A) is to encourage the payment and efficient collection of property taxes, satisfy the requirements of due process, provide a fair process for the redemption of tax sale property, and encourage the return of such properties to commerce.").

"Under the tax sale laws as amended in 2008, the tax collector no longer auctions the real estate itself; instead, the tax collector auctions a tax sale title to the property, as evidenced by a tax sale certificate per La. Rev. Stat. 47:2155, which neither transfers nor terminates the property interest of any person in the property." *Fairway Gardenhomes, LLC*, 225 So.3d at 448 (citing LA. REV. STAT. ANN. § 47:2121(B) & (C)). Properties sold in tax sales "shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption." LA. CONST. art. VII, § 25(B)(1). Indeed, "[a] title acquired at a 'tax sale is an inchoate one during the period for redemption and is defeated by the exercise of that right.'" *Miss. Land Co. v. S & A Props. II, Inc.*, 817 So.2d 1200, 1203 (La. App. 3 Cir. 2002) (quoting *Kelso v. Caffery*, 58 So.2d 402, 406 (La. 1952)). Thus, "the term 'tax sale' actually denotes that it is the tax lien that is purchased in the form of a tax sale title, albeit with future rights of ownership after due notice to all 'tax sale parties' and the expiration of the redemptive period, as well as the filing of a suit to quiet title." *Fairway Gardenhomes, LLC*, 225 So.3d at 449 (citation omitted). In other words, full ownership of adjudicated property—the right of use and possession, the right to enjoy, and the right to sell or encumber, *see* LA. CIV. CODE art. 477—cannot be acquired by a tax lien purchaser until the redemptive period expires and there is a judgment in a suit to quiet title. Until then, the tax debtor retains substantial ownership in the property.

At the time Anderson filed her bankruptcy petition in July 2016, the redemption period for Anderson to redeem her Home had not expired and Nebraska Alliance Realty Company had not obtained a judgment to quiet title on the Home. Under Louisiana law, Anderson would have lost her interest in the Home unless she redeemed the Home within the statutory redemption period. It follows, then, that Anderson's Home was property of the bankruptcy estate as of the Petition Date, as she retained ownership in that property even following the tax sale in September 2014. Nebraska Alliance Realty Company was the tax-lien purchaser as of the Petition Date, but was it a creditor holding a bankruptcy claim against Anderson's bankruptcy estate?

This Court finds that it was. A claim is either a right to payment or a right to an equitable remedy. *See* 11 U.S.C. § 101(5); *see also* 11 U.S.C. § 102(2) (interpreting "claim against the debtor" to include a "claim against property of the debtor"). Recognizing that the term "claim" has "the broadest available definition," *F.C.C. v. NextWave Personal Commc'ns Inc.*, 537 U.S. 293, 302 (2003) (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)), a "claim" under the Bankruptcy Code includes non-recourse claims, that is, a creditor's right to reach property to satisfy a monetary obligation, even if the property owner has no personal liability to the creditor, *see Johnson*, 501 U.S. at 85. As explained by one court, a tax lien purchaser's position is analogous to that of a non-recourse lienholder with regard to a debtor in bankruptcy:

> [I]t is the rights the debtor retains after the tax sale that [the purchaser] claims. [The purchaser] wants the Debtor's remaining equitable rights to be eliminated, and it was attempting to foreclose those rights. It wants the right to possession of the Property, the right to use the Property, the right to rent the Property, and the full 100 percent fee interest in the Property. The foreclosure process, however, was not completed at the time the bankruptcy petition was filed. ***The Debtor is in much the same position as the owner of property subject to a non-recourse lien.*** Even if the Debtor is not personally liable [to the purchaser] in a civil proceeding, the Debtor's underlying obligation remains enforceable against her property. Consequently, [the purchaser] holds a claim for the Debtor's equitable interest remaining in the Property including her right to use it and to possess it, or the monetary value thereof (the redemption price).

*In re Gonzalez*, 550 B.R. 711, 723 (Bankr. E.D. Pa. 2016) (quoting *In re Francis*, 489 B.R. 262, 268 (Bankr. N.D. Ga. 2013)).

Using a broad definition of "claim" as instructed by the Supreme Court, this Court finds that Nebraska Alliance Realty Company had a "right to an equitable remedy for breach of performance" as the holder of a non-recourse tax lien that could have been equitably enforced by obtaining a judgment in a suit to quiet title or, alternatively, it had a "right to payment" of the redemption amount if paid by the Debtor to the City of New Orleans as indicated in the Tax Sale Certificate. Thus, Nebraska Alliance Realty Company was a creditor holding a bankruptcy claim against Anderson's bankruptcy estate. *See In re LaMont*, 740 F.3d 397, 406–09 (7th Cir. 2014); *In re Gonzalez*, 550 B.R. at 719–23; *In re Pittman*, 549 B.R. 614, 625–29 (Bankr. E.D. Pa. 2016); *In re Martin*, 496 B.R. 323, 328–29 (Bankr. S.D.N.Y. 2013).[3]

## C. This Court's Order Confirming Anderson's Chapter 13 Plan Is Res Judicata in this Contested Matter

Courts are split on whether a debtor may use §§ 108 and 1322 of the Bankruptcy Code to extend redemption periods, to effect a redemption through a chapter 13 plan, and to modify the rights of a tax sale purchaser; at times, those divergent conclusions have been rooted in fundamental differences in governing state law. *Compare In re Tate*, No. 21-50947, 2021 WL 4467604, at *2–3 (Bankr. W.D. Tex. Sept. 29, 2021); *In re Christiano*, 605 B.R. 1, 8–10 (Bankr. D. Conn. 2019); *In re Richter*, 525 B.R. 735 (Bankr. C.D. Ca. 2015), *with In re LaMont*, 740 F.3d at 406–10; *In re Gonzalez*, 550 B.R. at 719–23; *In re Pittman*, 549 B.R. at 619–30; *In re Martin*,

---

[3] Regarding the question of whether a tax-lien purchaser under Louisiana law is a creditor holding a bankruptcy claim against a debtor, this Court departs from the finding made in *In re Curley*, 572 B.R. 622, 626–29 (Bankr. E.D. La. 2017). To reach its conclusion, the *Curley* court took a very narrow view not only of the bundle of rights remaining with the tax debtor under Louisiana law after a tax lien sale and before the expiration of the redemption period, but also of the definition of "claim" under §§ 101(5) and 102(2) of the Bankruptcy Code.

496 B.R. at 328–29. This Court need not enter the fray at this point, however, because this Court's order confirming Anderson's chapter 13 plan acts as res judicata in this contested matter.

Section 1327(a) provides for the finality of confirmation orders:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010). "The purpose of section 1327(a) is the same as the purpose served by the general doctrine of res judicata." *In re Turner-Mayo*, No. 05-44726, 2007 WL 484614, at *3 (Bankr. S.D. Tex. Feb. 8, 2007) (quoting 8 COLLIER ON BANKRUPTCY ¶ 1327.01[1] (Richard Levin & Henry J. Sommer eds., 15th ed.)). "There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order." *Id*. In this Circuit, and in line with the United States Supreme Court's holding in *Espinosa*, a confirmed chapter 13 plan acts as res judicata even where the plan includes a provision that exceeds the Court's authority or treats a creditor's claim in an impermissible manner. *See Republic Supply v. Shoaf*, 815 F.2d 1046, 1049–50 (5th Cir. 1992); *In re Turner-Mayo*, 2007 WL 484614, at *4–5.

For a confirmation order to have a res judicata effect, however, the well settled elements for res judicata must be present: "(1) the parties in the subsequent action are identical to, or in privity with, the parties in the prior action; (2) the judgment in the prior case was rendered by a court of competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same claim or cause of action is involved in both suits." *Bertuccelli v. Universal City Studios LLC*, No. 19-1304, 2020 WL 1493483, at *4 (E.D. La. Jan. 29, 2020) (quoting *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010)). In the case at bar, all of those elements are met.

*1. The identity of the parties*

"This element is satisfied not only by identity of 'formal or paper' parties but also of parties in interest, 'that is, . . . persons whose interests are properly placed before the court by someone with standing to represent them.'" *Republic Supply Co.*, 815 F.2d at 1051 (quoting *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir. 1984)). The record shows that Nebraska Alliance Realty Company and the City of New Orleans both received sufficient notice of Anderson's bankruptcy filing as well as of Anderson's proposed Plan and treatment of the tax lien debt. [No. 16-11851, ECF Docs. 1 & 16]. Both entities also received sufficient notice of the date of the hearing to consider confirmation of the plan. [No. 16-11851, ECF Doc. 15]. The City of New Orleans filed a proof of claim indicating the amount required to be paid by Anderson to redeem the Home, an amount she proposed to pay through the Plan. [No. 16-11851, ECF Doc. 7; Proof of Claim No. 4]. No objections to the proposed Plan were filed and the Court confirmed Anderson's Plan on September 30, 2016.

Anderson and Nebraska Alliance Realty Company were parties to the matter of plan confirmation; Sunset Harbour appears now before the Court in place of Nebraska Alliance Realty Company. Because Sunset Harbour and Nebraska Alliance Realty Company are not identical parties, the question before the Court is whether privity exists between Sunset Harbor and Nebraska Alliance Realty Company for purposes of res judicata. In this Circuit, "[f]or res judicata purposes, . . . privity exists . . . where the non-party's interests were adequately represented by a party to the original suit." *Bertuccelli*, 2020 WL 1493483, at *4 (quoting *Dilworth v. Vance*, 95 F.3d 50 (5th Cir. 1996)). "[I]f [a non-party] has succeeded to the party's interest in property, he is bound by prior judgments against the party." *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 983 (5th Cir. 1990). Nebraska Alliance Realty Company assigned its rights in the tax lien on

Anderson's Home without warranty to Sunset Harbour on January 29, 2021; therefore, Sunset Harbour is the successor-in-interest to Nebraska Alliance Realty Company and is bound by the Court's Order confirming Anderson's Plan and the terms contained therein.

2. *Judgment rendered by a court of competent jurisdiction*

The Court possessed jurisdiction to confirm Anderson's Plan under 28 U.S.C. § 1334(b); indeed, confirmation of a plan of reorganization is considered to be a "core" proceeding under 28 U.S.C. § 157(b)(2)(L). "Every court in rendering a judgment tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." *Republic Supply Co.*, 815 F.2d at 1052 (quoting *Stoll v. Gottlieb*, 305 U.S. 165, 171–72 (1938)). This Court determined that it had subject matter jurisdiction to confirm Anderson's Plan and that decision was not appealed. Thus, for purposes of res judicata, the order confirming Anderson's Plan was rendered by a court of competent jurisdiction.

3. *Final judgment on the merits*

"[A] final judgment for purposes of res judicata must finally dispose of some matter which under the substantive law to be applied and the procedural law of the forum can be, and has been, finally disposed of." *Republic Supply Co.*, 815 F.2d at 1053 (quoting *Southmark Props.*, 742 F.2d at 870 n.10). The order of this Court confirming Anderson's Plan and allowing Anderson to redeem her Home through the Plan is a final order and is, therefore, a final judgment on the merits.

4. *Same claim or cause of action*

The Fifth Circuit has adopted the transactional test to determine whether the same cause of action is involved in two suits. *See Petro-Hunt, L.L.C., v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004); *Republic Supply Co.*, 815 F.2d at 1053 (citing *Southmark Props.*, 742 F.2d at 869). "Under that test, the preclusive effect of a prior judgment extends to all rights the original plaintiff

had with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." *Petro-Hunt, L.L.C.*, 365 F.3d at 395–96 (internal quotations and citation omitted). "[T]he critical issue is whether the two actions under consideration are based on the *same nucleus of operative facts*." *Id*. at 396 (quoting *Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 934 (5th Cir. 1999)). Here, Sunset Harbour seeks a declaration from the Court that Anderson cannot redeem the Home through the Plan—an assertion arising out of the same transaction that was resolved by the Court's order confirming Anderson's Plan. *See Republic Supply Co.*, 815 F.2d at 1053–54 & n.8.

The Court thus concludes that all of the elements necessary for application of res judicata are satisfied. Having received adequate notice, Nebraska Alliance Realty Company bore the burden to review Anderson's Plan and object to its proposed treatment in that Plan. Once the Court's order confirming Anderson's Plan became final, Nebraska Alliance Realty Company and any successor-in-interest were estopped from collaterally attacking the confirmed Plan. *See Republic Supply Co.*, 815 F.2d at 1054; *In re Turner-Mayo*, 2007 WL 484614, at *5 (citing *Lester Mobile Homes Sales, Inc. v. Woods (In re Woods)*, 130 B.R. 204, 205–06 (W.D. Va. 1990)). Moreover, Anderson made all payments required under the Plan to the City of New Orleans through the Chapter 13 Trustee to redeem the Home, the Court approved the Chapter 13 Trustee's final report and account without objection, Anderson received a discharge of debt, and her case was closed on June 23, 2021. The Court finds that § 1327(a)'s policy of promoting the finality of confirmation orders and the principles of res judicata control here.

For the foregoing reasons,

**IT IS ORDERED** that the Anderson MSJ, [Adv. No. 22-1021, ECF Docs. 19 & 22], is **GRANTED.**

**IT IS FURTHER ORDERED** that the Sunset Harbour MSJ, [Adv. No. 22-1021, ECF Doc. 16], is **DENIED.**

A separate judgment on the Complaint filed in the above-captioned Adversary Proceeding consistent with this Memorandum Opinion and Order will be entered contemporaneously and in accordance with Bankruptcy Rules 7054 and 9021.

New Orleans, Louisiana, June 14, 2023.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE